ORIGINAL

**19 MAG 5342**

ORIGINAL

Approved: _Thane Rehn_
THANE REHN
Assistant United States Attorney

Before: HONORABLE GABRIEL W. GORENSTEIN
Chief United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          : **COMPLAINT**
                                  :
           - v. -                 : Violation of
                                  : 21 U.S.C. § 846
ALI ALSAIDI,                      : COUNTY OF OFFENSE:
                                  : BRONX
           Defendant.             :
                                  :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

GUS XHUDO, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE

1. In or about June 2019, in the Southern District of New York and elsewhere, ALI ALSAIDI, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that ALI ALSAIDI, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that ALI ALSAIDI, the defendant, conspired to distribute and possess with the intent to distribute were 400 grams and more of mixtures and substances

containing a detectable amount of fentanyl and cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of reports, records, and recorded conversations. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5. Based on my conversations with other law enforcement officers who participated in a business inspection of a particular bodega located in the Bronx, New York (the "Bodega"), on or about June 5, 2019, I have learned, in substance and among other things, the following:

a. The New York City Sheriff's Office (the "Sheriff's Office") has the authority under state and local law to conduct business inspections of retail establishments in the Bronx, among other places, to investigate whether they are engaged in the sale of untaxed cigarettes in violation of state and local law.

b. On or about the afternoon of June 5, 2019, a deputy ("Deputy-1") with the Sheriff's Office entered the Bodega to conduct a business inspection (the "Inspection"). ALI ALSAIDI, the defendant, was working at the Bodega behind the counter where customers would pay for items. ALSAIDI was the only person in the Bodega at the time of the Inspection.

c. While conducting the Inspection, Deputy-1 observed in plain view a glass bottle with a white plastic cap located on a shelf above the business counter. In plain view inside the clear glass bottle, Deputy-1 observed a white powdery

substance that, based on Deputy-1's training and experience, Deputy-1 believed to be a controlled substance.

   d. Deputy-1 took the glass bottle into law enforcement custody. A technician with the Sheriff's Office conducted a field test of the powdery substance in the glass bottle, which weighed approximately 1.5 grams, and field-tested positive for the presence of fentanyl and cocaine.

  6. On or about June 5, 2019, following the business Inspection described above in paragraph 4, the Honorable Gabriel W. Gorenstein, Chief United States Magistrate Judge for the Southern District of New York, issued a search warrant for the Bodega. Pursuant to that warrant, I and other law enforcement officers conducted a search of the Bodega. Based on my participation in that search and my discussions with other law enforcement officers who participated in the search, I have learned, in substance and among other things, the following:

   a. Behind the counter of the Bodega, in an area immediately accessible to the location where ALI ALSAIDI, the defendant, had been working, there was a panel concealing a hidden compartment. In that hidden compartment, law enforcement agents recovered approximately five additional glass bottles resembling the bottle initially seized by Deputy-1 during the Inspection, and containing a similar white powdery substance. In that compartment, law enforcement agents also recovered ten larger white plastic containers that contained a similar white powdery substance. Based on my training and experience, and the similarity between the substance in the plastic containers and the substance that was field-tested by the Sheriff's Office technician, I believe that the substance in the plastic containers contains fentanyl and cocaine.[1]

   b. The total weight of the plastic containers found in the hidden compartment was approximately 2.5 kilograms. Based on my observations of the weight of the containers and the amount of the substance inside of them, I believe that the total amount of fentanyl and cocaine was in excess of 400 grams.

---

[1] Because of the safety risks posed by contact with fentanyl, and pursuant to standard HSI practice when dealing with suspected fentanyl in the field, law enforcement agents have not conducted a field test of the substance found in these white plastic containers. I am awaiting the results of laboratory testing of this substance.

3

    c. In the counter of the Bodega, outside the cash register, law enforcement agents recovered approximately $800 in cash. Based on my training and experience, and the facts set forth herein, including that this cash was stored outside the register of the Bodega, I believe that this cash likely represents narcotics proceeds.

    d. On a shelf in the Bodega, law enforcement agents recovered two cardboard boxes containing glassine envelopes. Based on my training and experience, I know that glassine envelopes such as this are commonly used to package controlled substances, including fentanyl and cocaine, for distribution.

  7. Following the search described above in paragraph 5, I and other law enforcement officers placed ALI ALSAIDI, the defendant, under arrest. After he was placed under arrest, ALSAIDI was informed of his *Miranda* rights and waived those rights. ALSAIDI was then questioned about the containers of white powdery substance found in the Bodega. ALSAIDI stated, in sum and substance and among other things, that the white powdery substance belonged to his brother, who is overseas, and that the substance was mixed with other substances and cutting agents and sold to customers out of the Bodega. ALSAIDI denied selling the substance himself.

  WHEREFORE, I respectfully request that ALI ALSAIDI, the defendant, be imprisoned or bailed, as ~~the~~ case may be.

            _____
            GUS XHUDO
            SPECIAL AGENT
            HOMELAND SECURITY INVESTIGATIONS

Sworn to before me this
6th day of June, 2019

_____
THE HONORABLE GABRIEL W. GORENSTEIN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

4